OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio. Attention: Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
NOTE: Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public. The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Hutchinson, Appellant, v. Ohio Ferro Alloys Corporation; Mihm,
Administrator, et al., Appellees.
[Cite as Hutchinson v. Ohio Ferro Alloys Corp. (1994), -- Ohio
St. 3d ---.]
Workers' compensation -- Proof of three definitional criteria
     of "occupational disease" creates a compensable workers'
     compensation death benefits claim regardless of whether
     the disease is scheduled or non-scheduled -- R.C. 4123.68,
     construed.
Proof of the three definitional criteria of "occupational
     disease" -- causal connection, hazard, and risk -- creates
     a compensable workers' compensation death benefits claim,
     regardless of whether the disease is scheduled or
     non-scheduled. (R.C. 4123.68, construed.)
     (No. 93-319 -- Submitted February 23, 1994 -- Decided
August 10, 1994.)
     Appeal from the Court of Appeals for Muskingum County, No.
CA-9212.
     Bernard Hutchinson died in 1987 at the age of fifty-seven
while being treated for pneumonia. His wife, Bernadetta
Hutchinson, plaintiff-appellant herein, filed a workers'
compensation application for death benefits, claiming that the
decedent had died of silicosis, allegedly caused by exposure to
silica over the decedent's thirty-three years of employment at
Ohio Ferro Alloys Corporation.
     Mrs. Hutchinson's claim was denied administratively, and
she appealed to the Court of Common Pleas of Muskingum County
pursuant to R.C. 4123.519. At trial, the judge instructed the
jury regarding both scheduled and non-scheduled occupational
diseases. Regarding the scheduled disease "silicosis," the
judge instructed the jury as follows:
     "* * * Under the scheduled disease, a Plaintiff must prove
a disease called silicosis which is defined by law as 'a
disease of the lungs caused by breathing silica dust (silicon
dioxide) producing fibrous nodules distributed through the
lungs and demonstrated by x-ray examination, by biopsy or by
autopsy.'"
     The judge then instructed the jury on non-scheduled

diseases:

"Under a non-scheduled occupational disease, the Plaintiff Mrs. Hutchinson must prove by a preponderance of the evidence that:

"That the conditions of Plaintiff's employment result[ed] in a hazard which distinguishes Plaintiff's employment in character from employment generally; and that Plaintiff's employment at Ohio Ferro Alloys Corporation created a risk of contracting silicosis in a greater degree and in a different manner than the public generally.

"She must also prove by a preponderance of the evidence that Bernard Hutchinson developed silicosis and that it proximately caused a substantial hastening of his death. Under this form of an occupational disease, the Plaintiff need not prove that there are any particular type of nodules in order to participate in the Workers' Compensation Fund [sic, State Insurance Fund].

"If the Plaintiff proves either a scheduled or unscheduled occupational disease, she is entitled to participate in the Workers' Compensation Fund [sic]. If she does not prove either one of the two types of occupational diseases, she is not entitled to participate in the Workers' Compensation Fund [sic]."

Three interrogatories were submitted to the jury. The jury responded affirmatively to the first two:

"1. Do you find Bernard Hutchinson contracted the disease 'silicosis' in the course of his employment?

"2. Do you find that the disease 'silicosis' substantially accelerated the death of Bernard Hutchinson?"

The jury responded negatively to the third interrogatory:

"3. Do you find that Plaintiff's decedent, Bernard Hutchinson, had fibrous nodules distributetd [sic] through the lung?"

The trial court entered judgment on the plaintiff's behalf based upon the jury's general verdict and answers to interrogatories, and ordered that she be permitted to participate in the State Insurance Fund.

The appellate court reversed the trial court, finding that, as a matter of law, the jury could not find the disease "silicosis" without finding the existence of fibrous nodules. The appellate court stated that "silicosis cannot be transformed into an 'unscheduled form' of itself."

The cause is now before this court pursuant to a motion to certify the record.

James C. Ayers Law Office and Jeffrey Decile; and W. Allen Wolfe, for appellant.

Lee Fisher, Attorney General, and William J. McDonald, Assistant Attorney General, for appellees.

Stewart R. Jaffy and Marc J. Jaffy, urging reversal for amici curiae, United Steelworkers of America, AFL-CIO and Ohio Academy of Trial Lawyers.

Pfeifer, J. The sole issue before this court is whether a claimant can prove a scheduled disease using the general definition of "occupational disease" provided by R.C. 4123.68. We hold that a claimant may do so.

R.C 4123.68 (now R.C. 4123.01[F] defined an "occupational disease" as:

"a disease contracted in the course of employment, which by its causes and characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner than the public in general."

R.C. 4123.68 also provided a non-exclusive schedule of diseases which "shall be considered occupational disease and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section."

The schedule is non-exclusive because R.C. 4123.68 further provided that "[a] disease which meets the definition of an occupational disease is compensable pursuant to Chapter 4123 of the Revised Code though it is not specifically listed in this section."

Finally, we make our decision under the statutory mandate of liberal construction. R.C. 4123.95 states that "[s]ections 4123.01 to 4123.94, inclusive, of the Revised Code should be liberally construed in favor of employees and the dependents of deceased employees."

R.C. 4123.68 states that a disease satisfying the general definition of an "occupational disease" is compensable. The jury was properly instructed as to the general definition of "occupational disease." The general statutory definition does not require the presence of nodules. The jury's general verdict and interrogatory answers reflect that plaintiff did prove that decedent's disease was an occupational disease according to the general statutory definition.

That silicosis appears as a scheduled disease is irrelevant. Where an injured worker proves that he suffered an occupational disease as a result of his employment, nothing further need be proven. Proof of the three definitional criteria of "occupational disease" -- causal connection, hazard and risk -- creates a compensable claim, regardless of whether the disease is scheduled or non-scheduled.

R.C. 4123.68 could, but does not, say that a disease listed in the schedule can only be an occupational disease if it meets the schedule. Reading that restriction into the statute not only disregards the statute's plain language, but also violates the statutory mandate to liberally construe the statute in favor of employees and the dependents of deceased employees. We therefore reverse the judgment of the appellate court.

Judgment reversed.

A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Moyer, C.J., and Wright, J., dissent.

Moyer, C.J., dissenting.     I dissent because it is clear that the General Assembly intended that the occupational disease of silicosis could be proven only by a showing that the claimant (or decedent) had "a disease of the lungs caused by breathing silica dust (silicon dioxide) producing fibrous nodules distributed through the lungs and demonstrated by x-ray

examination, by biopsy or by autopsy." R.C. 4123.68(X). One needs no technical rule of statutory construction to conclude that, had the General Assembly intended that the existence of silicosis in the lungs of a claimant could be proven pursuant to the standards for proving a non-scheduled disease, it would not have precisely defined the disease as it did in R.C. 4123.68. The only reasonable conclusion to be drawn from the precise definition of silicosis in the statute is that there must be an objective finding that fibrous nodules are or were distributed through the lungs of the claimant. In this case, neither the evidence nor the jury indicates that to be the fact.

Although the majority opinion does not do so, appellant relies upon the case of State ex rel. Gen. Motors Corp. v. Indus. Comm. (1975), 42 Ohio St.2d 255, 71 O.O.2d 230, 327 N.E.2d 761. The case is close on its facts but not close enough to be controlling. In General Motors, all parties agreed that the claimant had "contact dermatitis," which was a listed disease in R.C. 4123.68 but not defined as precisely as is silicosis. The issue in General Motors was whether the claimant had contracted the disease from any of the industrial processes listed in the statute, and the court held "*** that where a claimant alleges contracting an occupational disease which is nonscheduled in R.C. 4123.68 or which is scheduled but not alleged to be due to the nature of any process described in the same subsection, then recourse may be had to subsection (BB) for an award of compensation." Id. at 258-259, 71 O.O.2d at 232, 327 N.E.2d at 764.

I would not expand the holding of General Motors that permitted a claimant to show that she had contracted a disease from a source other than a source designated in the statute to hold that a claimant could, in effect, change the statutory definition of a disease to receive compensation.

The judgment of the court of appeals should be affirmed.

Wright, J., concurs in the foregoing dissenting opinion.